In re Theodore MILLION, Cecelia Million, Debtors.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION, Movant,**

v.

**Theodore MILLION, Cecelia Million, and William R. Schumacher, Chapter 13 Trustee, Respondents.**

**Bankruptcy No. 1–83–03309.**

United States Bankruptcy Court, S.D. Ohio, W.D.

April 6, 1984.

Fred Ross, Middletown, Ohio, for debtors/respondents.

Jeffrey V. Laurito, Dayton, Ohio, for movant.

William R. Schumacher, Cincinnati, Ohio, Chapter 13 Office Trustee.

## DECISION ON MOTION FOR RELIEF FROM AUTOMATIC STAY

BURTON PERLMAN, Bankruptcy Judge.

On December 21, 1983 the debtors, husband and wife, filed a joint Chapter 13 petition. No objection to confirmation was made and the plan was confirmed by the Court on January 24, 1984. Federal National Mortgage Association (Federal), a creditor, had on January 19, 1984 filed a motion for relief from the automatic stay, seeking relief so that it could proceed with a pending foreclosure action in state court. The matter came on for preliminary hearing in accordance with 11 U.S.C. § 362(e). At the preliminary hearing, the parties agreed to submit the case on its merits, eliminating the need for a final hearing. Both parties subsequently submitted memoranda addressing the legal issues developed at the hearing.

Federal is the holder of a note secured by a mortgage on the debtors' residence located at 507 Fifteenth Avenue, Middletown, Ohio. The original amount of the note was $13,250.00 with 7½ per cent per annum interest. Debtors defaulted on repayment and are currently indebted in the principal amount of $10,584.67 plus interest. As a result of the default, Federal accelerated the indebtedness making it at once due and payable, and instituted a foreclosure action in the Common Pleas Court of Butler County. Federal was awarded a decree for foreclosure and a sheriff's sale was held on November 17, 1983. The property was auctioned to Joyce Stafford on that date. All of the foregoing occurred prior to the bankruptcy filing by debtors. On December 21, 1983 the debtors filed a Chapter 13 petition in this Court. The debtors' Chapter 13 plan provides that the debtors will pay Federal $67.50 per month through the plan to cure the arrearage of $2,275.04 and that regular monthly mortgage payments to Federal will be made outside the plan.

Federal puts forth two arguments in requesting relief from the automatic stay. Federal first argues that ownership of the premises was acquired by Joyce Stafford on the date of the sale and that the property was therefore not the property of the debtors on the date that they filed their bankruptcy petition. Federal then argues that the debtors have no equity in the premises and that the property is not necessary to an effective reorganization.

After considering the positions and arguments of the parties, we conclude that we must deny Federal's motion for relief from the automatic stay.

Federal argues that pursuant to 11 U.S.C. § 362(d)(1) the automatic stay should be lifted because ownership of the premises passed to Joyce Stafford on the date of the sheriff's sale and therefore was not the property of the debtors on the date of the filing of their Chapter 13 petition. The issue is whether the premises were property of the debtors' estate on the date of the filing.

■ What comprises property of the estate is dealt with at 11 U.S.C. § 541:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

\* \* \* \* \* \*

We have concluded that the property was property of the debtors' estate on the date of the filing of the Chapter 13 petition, notwithstanding the foreclosure sale. After property has been sold through foreclosure, Ohio Revised Code § 2329.31 (Page 1981) provides that the sale must be confirmed:

Upon the return of any writ of execution for the satisfaction of which lands and tenements have been sold, on careful examination of the proceedings of the officer making the sale, if the court of common pleas finds that the sale was made, in all respects, in conformity with sections 2329.01 to 2329.61, inclusive, of the Revised Code, it shall direct the clerk of the court of common pleas to make an entry on the journal that the court is satisfied of the legality of such sale, and that the officer make to the purchaser a deed for the lands and tenements.

The deed is not given to the purchaser until confirmation of the sale has taken place:

An officer, including a master commissioner and a special master, who sells real property, on confirmation of the sale, must make to the purchaser a deed, containing the names of the parties to the judgment, the names of the owners of the property sold, a reference to the volume and page of the recording of the next preceding recorded instrument by or through which the owners claim title, the date and amount of the judgment, the substance of the execution or order on which the property was sold, the substance of the officer's return thereon, and the order of confirmation. The deed shall be executed, acknowledged, and recorded as other deeds.

Ohio Revised Code Ann. § 2329.36 (Page 1981). The property does not vest in the purchaser until the deed is given:

The deed provided for in section 2329.-36 of the Revised Code shall be prima facie evidence of the legality and regularity of the sale. All the estate and interest of the person whose property the officer so professed to sell and convey, whether it existed at the time the property became liable to satisfy the judgment, or was acquired afterward, shall be vested in the purchaser by such sale.

Ohio Rev.Code Ann. § 2329.37 (Page 1981). In the case before us, the foreclosure sale was not confirmed and no deed was given to the purchaser.

In addition, it should be noted that under Ohio Revised Code § 2329.33 (Page 1981), the debtor may redeem the property from sale at any time before confirmation:

In sales of real estate on execution or order of sale, at any time before the confirmation thereof, the debtor may redeem it from sale by depositing in the hands of the clerk of the court of common pleas to which such execution or order is returnable, the amount of the judgment or decree upon which such lands were sold, with all costs, including poundage, and interest at the rate of eight per cent per annum on the purchase money from the day of sale to the time of such deposit, except where the judgment creditor is the purchaser, the interest at such rate on the excess above his claim. The court of common pleas thereupon shall make an order setting aside such sale, and apply the deposit to the payment of such judgment or decree and costs, and award such interest to the purchaser, who shall receive from the officer making the sale the purchase money paid by him, and the interest from the clerk. This section does not take away the power of the court to set aside such sale for any reason for which it might have been set aside prior to April 16, 1888.

Federal maintains that the property passed to Stafford on the date of the sale because confirmation of the sale simply is for the curing of mere irregularities that may have occurred. A similar argument was made in *Reed v. Radigan*, 42 Ohio St. 292, 293–294 (1884), but rejected by the Ohio Supreme Court:

It is maintained by the defendant in error that, the preceedings having conformed to the requirements of this enactment, [Rev.Stat. § 5398] there was no discretion in the court, and that it was its plain duty to confirm the sale and order a deed to the purchaser; and that, having paid the purchase money in full, he became invested with an interest in the land which could not be subsequently divested by any act of the debtor or of the court. If this construction of the provision

above cited is to prevail, it will follow that ... in a variety of cases where a confirmation of the sale will work hardship and sacrifice, the court is powerless to avert the wrong by the easy and simple means of setting aside, or refusing to confirm the sale. Such a construction of the statute and of the powers of the court is not only against the common understanding of the profession, and at variance with the uniform practice of the courts, but we believe it is, both upon principle and authority, untenable.

It should be borne in mind that the primary object of the sale by the sheriff is to make the money due the creditor ... and when this is accomplished, there is no substantial reason why the proceedings should go farther... It will be found upon an examination of the authorities, that in states where confirmation is required, the purchaser obtains no vested rights until after the sale is confirmed, and if the confirmation (which depends upon the sound discretion of the court,) is refused, the rights of the purchaser fall to the ground.

It was stated in *Michigan Mortgage Corp. v. Oakley,* 68 Ohio App.2d 83, 84, 426 N.E.2d 1195, 1196 (1980), that, "[a]lthough the general policy of the law is to give judicial sales finality, it would appear from the decision in *Reed* that, at least until the sale has been confirmed, the court has wide discretion to avoid 'hardship and sacrifice.'" Similarly, it was stated in *Citizens Loan & Savings Co. v. Stone,* 1 Ohio App.2d 551, 555, 206 N.E.2d 17, 21 (1965), that,

A judicial sale is subject to confirmation of the court. As pointed out in *Reed v. Radigan* (1884), 42 Ohio St. 292, there are a substantial number of grounds upon which an interested party may be entitled to attack a sale, even though a judgment and the order of sale are proper. The purpose of confirmation is not just to examine the documents or previous orders of the court and the return, but is to afford an opportunity for objection and a hearing to determine if any objection is well taken. It is to enable the court to prevent hardship or sacrifice or any wrong which may have occurred.

In addition, it was held in *Stone* that,

The mortgagor's right to redeem exists and may be exercised as an absolute right until confirmation of the sale. It cannot be cut off prior to confirmation, and the purchaser at the sale acquires no vested right to the property until after confirmation.

*Id.,* at paragraph four of the syllabus. The court went on to state that, "... as to the ... property owner, the right to retain ownership of his property is clearly a substantial right, and it is the confirmation order which operates to divest him of that right." *Id.* at 552–553, 206 N.E.2d at 19.

■ Finally, it was held in *Hoyd v. Citizens Bank of Albany Co.,* 89 F.2d 105, 108 (6th Cir.1937), a case arising under the Bankruptcy Act, that an Ohio mortgagor's equity of redemption constitutes property subject to the federal court's jurisdiction:

As sale in Ohio is not complete until valid confirmation ... appellant at the time he filed his petition had an equity of redemption consisting of an estate and not of a mere right to redeem. Under Ohio law this constitutes property ... If the confirmation of sale is unauthorized or is refused, the purchaser at judicial sale obtains no vested right... We conclude that as the sale had not been confirmed at the time of filing the petition, appellant's equity of redemption had not been barred, and that it constituted 'property' which was subject to the jurisdiction of the federal court...

We conclude, therefore, that until the sale is confirmed, the purchaser obtains no vested rights and the property remains property of the debtor's estate. *See In re McCann,* 27 B.R. 678, 679 (Bkrtcy.S.D.Ohio 1982).

In an earlier case, we held that 11 U.S.C. § 1322(b)(5) was intended to allow a mortgagor to deaccelerate a mortgage where under state law there has been acceleration, and to reinstate the original payment schedule, even where a judgment has been

obtained. *In re Hubbard*, 23 B.R. 671, 672 (Bkrtcy.S.D.Ohio 1982). Similarly, debtors in the case before us will be permitted to cure their default in accordance with their confirmed plan. We agree with the reasoning set forth in *In re Ivory*, 32 B.R. 788, 791–792 (Bkrtcy.D.Or.1983):

> ... a debtor may cure a default after a foreclosure sale has been held provided that at the time of filing, the debtor still retains an interest in the sold property ... a debtor retains an interest in the property until the statutory redemption period has run and legal title has passed. Upon the filing of a petition under the Bankruptcy Code, all legal and equitable interests of the debtor in property as of the commencement of the case become property of the estate. 11 U.S.C. § 541 ... the debtor's right of redemption became property of the estate at the time of the debtors' filing. The fact that the debtors still retain an interest in the sold property gives them the right to effect a cure under 11 U.S.C. § 1322(b)(5)... This court therefore concludes that all the steps in the process set up by contract and state law to divest a defaulting debtor of his interest in real property may be voided by the court under § 1322(b)(5) at any time prior to the final divestment of the debtor's interest.

*See also, In re Johnson*, 29 B.R. 104 (Bkrtcy.S.D.Fla.1983), *In re Chambers*, 27 B.R. 687 (Bkrtcy.S.D.Fla.1983), *In re Kokkinis*, 22 B.R. 353 (Bkrtcy.N.D.Ill.1982), *In re Taylor*, 21 B.R. 179 (Bkrtcy.W.D.Mo. 1982), *In re Gooden*, 21 B.R. 456 (Bkrtcy. N.D.Ga.1982), and *In re Thompson*, 17 B.R. 748 (Bkrtcy.W.D.Mich.1982). *But see, In re Gwinn*, 34 B.R. 936 (Bkrtcy.S.D.Ohio 1983).

Federal also argues pursuant to 11 U.S.C. § 362(d)(2) that the debtors have no equity in the premises and that the property is not necessary to an effective reorganization. The evidence does not support this argument. The debtors stated at the hearing that retention of their home is essential to their plan and that its loss would destroy their attempt at financial reorganization.

For all of the above reasons, the motion for relief from automatic stay will be denied.